ELLIS, Judge.
The City of Donaldsonville, Louisiana, was incorporated under Act 139 of 1900 and operated thereunder until 1913 when it elected to be governed under the commission plan as set forth in Act 207 of 1912, and it has continued to be governed by the provisions of this Act and amendments thereto to date. The present law defining and covering the commission plan of government is contained in LRS-LSA 33:501-562. The source of the law as contained in the Louisiana Revised Statutes, supra, was taken from prior enactments of the Legislature covering Government under the commission plan, viz, Act 302 of 1910, Act 207 of 1912 and amendments to said Acts.
The plaintiff was duly elected Mayor of the City of Donaldsonville, Louisiana, on May 30th, 1961, received his commission and was sworn in as “ Mayor and Commissioner of Public Health and Safety, City of Donaldsonville, * * * Also elected as Commissioner of Finance was the defendant, Joseph Montero, II, and as Commissioner of Streets and Parks, Lawrence Re-girá, defendants.
Prior to June 20th, 1961, under the provisions of Municipal Ordinance No. 328, the Mayor, as ex-officio Commissioner of Public Health and Safety, had been given the power to hire and fire all personnel in his department, which was also true of the Commissioner of Finance and of Streets and Parks for the City of Donaldsonville.
On June 20th, 1961 at a special meeting of the Commission Council, which was composed under the law of the three Commissioners of the City of Donaldsonville, the following ordinances were passed by a two to one vote, the two defendants, the *786 Commissioners of Finance and of Streets and Parks voting for said ordinances, and the plaintiff, the Commissioner of Public Health and Safety voting against said ordinances, all of which have been offered in evidence, and we quote:
“The following ordinance was introduced by Mr. Montero and seconded by Mr. Re-girá': ’
“An Ordinance to amend and reenact Section 20 of Part 1 of Chapter 3 of the Municipal Ordinance No. 328 by Substituting the words Commission Council instead of the words ‘Director of the individual Department or Agency’.
“Be it Ordained by the Commission Council of the City of Donaldsonville, Louisiana, that Section 20 of Part 1 of Chapter 3 of Municipal Ordinance No. 328 be and the same is hereby amended and reenacted to delete the words ‘Director of the Individual Department or Agency’ and to substitute therefor the words ‘Commission Council’, so that the amended Section of said ordinance shall read as follows:
“ ‘Chapter 3. Personnel.
“ ‘Part 1. Number of Employees,
“ ‘Section 20. Fixing the number of Employees. The number of Employees within the various department and agencies of the City of Donaldsonville, be and they are hereby fixed in the number determined by the. Commission Council in the smallest number determined best to perform all duties of said Department or Agency.’
“Be it Further Ordained by the Commission Council of the City of Donaldsonville, Louisiana, that any ordinance and parts of ordinances in conflict herewith are hereby repealed.
“The ordinance having been submitted to a vote, the vote thereon was as follows:
"Yeas:. Joseph Montero- 11, and Lawrence ' Regira. •
“Nays: D. C. Foti.
“And the ordinance was declared adopted this 20th day of June, 1961.
“The following ordinance was introduced by Mr. Montero and seconded by Mr. Regira:
Administrative Ordinance
“An Ordinance to formally provide for and fix the day, time and place of regular meetings of the Commission Council; to formally provide for and fix the manner and procedure for calling special meetings of the Commission Council and to provide for and fix the time and place of special meetings; to formally provide' for and fix the general conduct of the Council meetings; to formally define, determine and assign the powers and duties to be performed by each of the three departments of the City of Donaldsonville Government under the provisions of Law; to formally define, determine and assign the administrative functions of each superintendent of the respective departments under the provisions of law; and to formally define, determine and establish the powers, duties and functions to be exercised by the Commission Council as a whole under the provisions of law.
“Whereas, The City Council deems it essential and necessary that the powers and duties of each department of the City Government .should be fully set forth and defined by ordinance as' directed by Title 33 of Section 531 et seq., of the 1950 Revised Statutes of the State of Louisiana, for the more efficient and harmonious conduct of the affairs of this City; and
“Whereas the City Council deems it necessary that this ordinance become effective immediately in order that the powers, functions and duties of each department and of all employees of the City of Donaldsonville be clearly and specifically set out according *787 to law avoiding any situation of overlapping jurisdiction of departmental heads and supervisors, all of which is for the immediate preservation of public peace, health and safety;
"Therefore, he it Ordained by the City Council of the City of Donaldsonville, that:
Article 1. General Provisions
“Section 1. (Powers and Functions) The Council shall consist of three members elected for a four year term, as is provided by Section 522 of Title 33, Revised Statutes of 1950. The Council shall be the governing body of the City and shall have the powers and duties prescribed by Statute.
“Section 2. (Departments) The City Government shall be divided into three departments, as is provided in Section 531 of Title 33, Revised Statutes of 1950, and each commissioner shall be the superintendent of the respective department for which he qualified and was duly elected, as provided by law. The Mayor shall be Commissioner of Public Health and Safety as provided by law.
“Section 3. (Meetings) The regular meetings of the Council shall be held as follows: The first regular meeting shall be held on the first Monday after the election of the Councilmen, and thereafter on the Second Tuesday of each succeeding month at the hour of eight P.M. in the Council room of the City Hall.
“Section 4. (Special Meetings) Special meetings may be called by the Mayor or any two commissioners upon a twenty four hour notice to every member of the Council. These special meetings shall be held at the same hour and place provided for regular meetings of the City Council. Provided that the requirement of a notice shall not be binding in any special meeting at which all of the members of the Council are present.
“Such notices may be served by any member of the police department or by any other person in the City; and it shall be the duty of the City Clerk when given copies of such notices to serve the same and/or cause the same to be served immediately.
“Section 5. (Presiding Officer) The Mayor shall be Chairman of the Council and shall preside at its meetings. The Commissioner of the Department of Finance and Public Utilities shall be Vice Chairman of the Council, and, in case of a vacancy in the office of Mayor or the absence of inability of the Mayor, shall perform the duties of the Mayor.
Article 11. The Mayor
"Section 6. (Superintendent of Public Health and Safety) The Mayor shall be commissioner of the department of Public Health and Safety and shall be superintendent of the department of Public Health and Safety; and shall report to the Council for its actions all matters requiring the attention of any department.
“Section 7. (General Duties) The Mayor shall have and exercise all powers and perform all the duties that are or may be prescribed by law or by City Ordinance. He shall preside over the City Court. He shall be the representative of the City; and he shall sign all contracts on behalf of- the City; he shall cause to be prepared and published all statement and reports required to be prepared and published by law or by ordinance or resolution of the council.
“Section 8. (Enforcement of Ordinances) He shall enforce or cause to be enforced, the laws of the State and the ordinances of the City, relating to public health and safety.
“Section 9. (Departments, Officers and Employees) The Fire Department and Police Department, and all officers, assistants and employees therein are hereby distributed and assigned to the Department of Public Health and Safety, subject, however, to the provisions of Sections 24, 25, and 26 of this ordinance. '
*788 Article 111. The Commissioner of Finance and Public Utilities
“Section 10. (Superintendent of Department) The Commissioner of Finance and public Utilities shall be superintendent of the Department of Finance and public Utilities and shall have supervision over and direction of all accounts, finances and public utilities of the City, and shall have charge of and supervision and direction over all records of the City and all officers, boards and departments insofar as the accounts, records and public utilities of the City are concerned.
“Section 11. (Accounts and Records) He shall cause proper accounts and records to be kept and proper reports to be made by the officers and/or departments of the City, insofar as the accounts and finances of the City are concerned.
“Section 12. He Shall audit, or cause to be audited, at frequent intervals as provided by law, the accounts and records of officers or employees of the City who may receive or disburse money, and shall see to it that the annual audit required by law is made.
“Section 13. (Inspecting Accounts) He shall inspect, or cause to be inspected all records of accounts required to be kept in any of the offices or departments of the City, insofar as the accounts and finances of the City are concerned, and shall, at least once in every month, report the result of such inspection to the Council, with such recommendations as he shall see fit to make.
"Section 14. (Report on Bills) He shall examine, or cause to be examined, and report to the Council, upon all bills, accounts, payrolls, demands, and claims before they are acted upon, unless otherwise provided by law or ordinance.
“Section IS. (Collection of Money) He shall collect, or cause to be collected, all claims, demands, licenses fees, inspection fees, franchise taxes, fines, penalties, forfeitures, rentals or money, which may be due or become due to the City, except as otherwise provided for by statute or City Ordinance.
“Section 16. (Warrants, drafts, checks) He shall sign all warrants, drafts, checks on behalf of the City, and all licenses issued by the City.
“Section 17. (Officers, Employees and Departments.) The City Clerk, City Collector, and their respective offices and departments, all officers, assistants, and employees therein all officers and employees of the gas department and other public utilities, all clerical employees in the City Hall, all bookkeepers, accountants, and all other officers and employees of the City who are not specifically assigned to any other department are hereby distributed and assigned to the Department of Finance and Public Utilities and shall be under the supervision and direction of the Commissioner thereof; subject, however, to the provisions of the Sections, 24, 25 and 26 of this ordinance.
“Section 18. (Bond) He shall require that every officer or employee having the care of or custody of funds of the City, shall, before entering upon the duties of their respective offices, give bond to the City according to law, with good, and sufficient security, and in such amount as the Council shall be ordinance or resolution prescribed.
Article IV. Commissioner of Streets and Parks.
“Section 19. (General Duties) The Commissioner of Streets and Parks shall be superintendent of the Department of Streets and Parks and shall have charge of, and supervision over, and direction of the cleaning and sprinkling of streets, avenues, alleys and public places; the construction and reconstruction of all street improvements, sidewalks, crosswalks, drains, ditches, gutters, culverts, crossing bridges, viaducts and other improvements, and the maintenance and repair thereof, except when such improvement, maintenance or repairs are paid for by special assessment; shall have custody of and be charged with the supervision of public property.
*789 “Section 20, (Officers and Employees). The Building Inspector, Civil Engineer, and all persons employed by the City in the maintenance, construction, or repairs of the streets, sidewalks, sewer system or storm sewers, street lighting, the city dump and sanitary land fill and the collection of garbage and refuse are hereby assigned to the department of Streets and Parks and shall be under the supervision of the Commissioner of Streets and Parks; subject, however, to the provisions of Sections 25, 24 and 26 of this ordinance.
“Section 21. (Custody of Buildings) He shall have the custody of and be responsible for the maintenance and repair of, the City Hall, all fire and police stations, the city garages and storage houses, and all other city owned buildings and grounds.
“Section 22. (Inventory and Maps) The Commissioner of Streets and Parks shall keep or cause to be kept an accurate inventory of all public property of the City used or controlled by any department thereof, and shall keep accurate maps, plats, and records of all public works, lands or property owned by the City.
Article V. The Commission Council as a Whole.
“Section 23. (General Powers, Duties and Functions) The Commission Council shall have and exercise all powers, duties and functions conferred by Sections 501 to 570, inclusive, of Title 33 of the Revised Statutes of 1950; the Commission Council shall have and exercise all powers, duties and functions had and exercised by the municipal authorities under the Charter of the Municipality prior to the time the City came under the Commission Plan form of municipal government, provided the same does not conflict with any of the provisions of the applicable statute(s) cited in this Section; The Commission Council shall determine the powers of and duties to be performed by a department, shall prescribe the powers and duties of officers and employees, assign particular officers and employees to one or more of the departments, require any officer or employee to perform duties in two or more of the departments and make rules and regulations necessary for the proper and economical conduct of the affairs of the municipality, all as is provided by law.
“Section 24 (Appointments) The Commission Council shall appoint by majority vote, subject to the provisions of any applicable civil service law, the municipal attorney, City Clerk, Tax Collector, Secretary-Treasurer, Chief of Police, Chief of the Fire Department, Auditor, Civil Engineer and any other officers and assistants necessary for the efficient conduct of the affairs of the municipality; provided that with the exception of the Chief of Police and Chief of the Fire Department, only the above named officers who are necessary for the efficient transaction of the affairs of the municipality shall be appointed.
“Any official or assistant appointed by the Commission Council may be removed from office at any time by a vote of a majority of the members of the Council, subject to the provisions of the applicable Civil Service Law.
“The Commission Council shall appoint or hire by majority vote, subject to the provisions of any applicable Civil Service Law, all personel, employed by the City, including but not by way of limitation, all gas department employees, all garbage employees and collectors, all street maintenance employees, all parks maintenance employees, all sewer maintenance employees, all clerical workers, bookkeepers, city policemen, city firemen, all employees not assigned to specific departments and all temporary or casual employees. All personel or employees appointed or hired under this paragraph may be removed from his office or employment at any time by a vote of a majority of the members of the Council, subject to the provisions of any applicable Civil Service Law
“Section 25. (Fixing Compensation). The Commission Council by Ordinance shall *790 fix and prescribe the salaries of all officers and employees of the City.
“Section 26. (Conditions of Employment) The Commission Council, shall, by ordinance, determine and prescribe the conditions of employment of the officers and employees of the City with reference to the qualifications for the offices or positions of employment, the age requirements of all officers and employees of the City, and the number- of working hours to be required in one working day. Each department shall be treated separately in determining qualifications, age limitations and the number of working hours to be required of each employee on one working day.
Article VI. Separability, Savings Clause, Repealing Provision
“Section 27 (Separability) If, for any reason, any section of this ordinance, or any part. of? any section of this ordinance, is declared unconstitutional or invalid, the other separable provisions hereof shall not be affected thereby.
“Section 28. (Saving Clause) The repeal of the ordinances or parts of ordinances effectuated by'the enáctment of this ordinance-shall not be construed as abating any actions 'now-pending under or by virtue of such ordinance 'or as discontinuance, abating, modifying or altering any penalty accruing or to accrue or as affecting the liability of any person, firm or corporation or as waiving any right of the municipality under any section or provisions existing at the time of the passage of this ordinance.
“Section 29. (Repealing Provision) Any ordinance and parts of ordinances in conflict herewith be and the same are hereby repealed.
“The ordinance having been submitted to a vote, the vote thereon was as follows:
Yeas: Joseph Montero II and Lawrence Regira '•
Nays: Dr. D. C. Foti
“And the ordinance was declared adopted this 20th day of June, 1961.”
“The following resolution was introduced by Mr. Montero and seconded by Mr. Regira:
“A Resolution employing municipal officers and employees of the City of Donaldsonville, fixing their rate of or basis of compensation and assigning ■ said employees to the respective department.
“B-e it Resolved by the Commission Council of the City of Donaldsonville, Louisiana, that George R. Blum is hereby appointed municipal attorney and Vincent J. Sotile is hereby appointed assistant municipal attorney; that Leo Mattingly is hereby appointed Chief of Police and Tax Collector; that C. J. Mistretta is hereby appointed Chief of the Fire Department;that R. Jeff Mouton is hereby appointed auditor effective October 1, 1961; that the firm of -Porter, Barry and Associates is-hereby appointed engineers; that Robert LeBlanc is hereby appointed assistant Chief of.Police and that Joseph A. Ran-dazzo is hereby appointed Assistant Fire Chief.
“Be It Further Resolved by the Commission Council of the City of Donaldsonville) Louisiana, that George R. Blum and Vincent J. Sotile, Municipal Attorneys, Porter, Barry & Associates, Municipal Engineers, and R. Jeff Mouton, Municipal Auditor, shall serve without a fixed salary but shall be compensated for work performed.
“Be It Further Resolved by the Commission Council of the City of Donaldsonville, Louisiana, that the following named employees shall serve in the respective departments under which their names appear and at the fixed salary or compensation set forth opposite their names as follows, to-wit:
*791 Gas and Public Utilities Department Basis of Compensation •
Mrs. P. L. Bouchereau, Clercial $275.00 per month '
Mrs. Claude Herbert, Clerical 210.00 per month
Leo Mattingly, Clerical 140.00 per month
Vincent H. Ruiz, Meter Man and Stock Clerk 275.00 per month
Lucien J. Bagala, Superintendent 350.00 per month
Carl F. Quezaire, Laborer 1.20 per hour
Salvadore Sam Bonadonna, Assistant Superintendent 275.00 per month
Robert Johnson, Laborer 1.10 per hour
Melvin Smith, Laborer 1.00 per hour
Robert Jupiter 1.10 per hour
Joseph Walter Nareaux, Laborer 1.15 per hour
Louis C. Coleman, Laborer 1.00 per hour
Ulysse Cassard, Sr., Laborer 1.00 per hour
Police Department Basis of Compensation -i — -
Leo Mattingly, Chief of Police $250.00 per month
Sam Solar, officer 225.00 per month
George Rodeilliat, Officer 225.00 per month
Lawrence Melancon, Officer & Radioman 140.00 per month
Robert LeBlanc, Assistant Chief of Police 225.00 per month
LeBlanc Dill, Officer 225.00 per month
Morris B. Bonadonna, Officer 225.00 per month
Leopole Ribet, Officer 225.00 per month
Clarence F. Alexander, Jr. Officer 225.00 per month
Fire Department Basis of Compensation
G. J. Mistretta, Fire Chief $300.00 per month
Joseph A. Randazzo, Assistant Fire Chief 275.00 per month
Walter Sanchez, Fireman 250.00 per month
Streets and Parks Department Basis of Compensation
Joe Millien, Laborer $ 1.10 per hour
Charley Spagnola, Laborer 75.00 per month'
Edmond Simoneaux, Laborer 1.10 per hour
Walter Lee, Laborer 1.00 per hour
Emile LeBeouf, Laborer 1.00 per hour
Ulysse J. Alonzo, Laborer 1.10 per hour
Kelly M. LeBlanc, Laborer 1.10 per hour
John Dright, Laborer 1.10 per hour
Philip J. Dugas, Laborer 1.00 per hour
Enaul J. Millien, Laborer 1.00 per hour
Temporary Employees (Swimming Pools) Basis of Compensation
David Simoneaux, Lifeguard $250.00 per month
Linwood Barthelemy, Lifeguard 250.00 per month
Jimmie Regira, Lifeguard 250.00 per month
Mrs. Mary Trepagnier, Collector 6.00 per day
Ruby Johnston, Collector 6.00 per day
Willie Baker, Lifeguard 250.00 per month
*792 “The resolution having been put to a vote, the vote thereon was as follows:
Yeas: Joseph Montero II and Lawrence Regiar
Nays: D. C. Foti
“And the resolution was declared adopted this 20th day of June, 1961.”
On the 14th day of July, 1961 the plaintiff filed the present suit for an injunction, secured a rule returnable on the 21st day of July 1961 directed to Joseph Montero, II, Commissioner of Finance for the City of Donaldsonville, and Lawrence Regira, Commissioner of Streets and Parks for the City of Donaldsonville, as well as to the Commission Council for the City of Donald-sonville, for them and each of them to appear and “show cause why preliminary injunction should not issue prohibiting and enjoining them from enforcing and acting under ‘Administrative Ordinance’ (supra) and the ordinance amending Section 20 of Part 1 of Chapter 3 of Municipal Ordinance No. 327, adopted June 20, 1961 (supra) and the resolution of employment adopted thereunder and from any way in-terferring with molesting or preventing Dr. D. C. Foti, Mayor of Donaldsonville, and Commissioner of Public Health and Safety in any manner, shape or form, from performing all the regular and customary duties of his office, and more particularly but not exclusively from hiring and discharging all the employees of the Fire, Police, Garbage Collection, Swimming, Lighting Department, Building.Inspector (other than the Chief of Police' and the Fire Chief) Secretary to the Mayor and other help, at salaries commensurate with past and present practices, and the calling of special meetings of the Commission Council at such times as he may deem necessary and proper for the efficient and expedition administration of city business, according to law.”
In plaintiff’s petition for a preliminary and, thereafter, a permanent, injunction he made the following material allegations:
“3. That as such petitioner is the Commissioner of Public Health and Safety, and entitled by. law to all the powers and duties pertaining to said departments.
“4. That traditionally and by custom as well as by law, 'said department included superintendence over the police, fire, sewerage, lighting, city administration (clerical and otherwise), activities, as well as all matters and practices pertaining to the health or safety of the citizens of Don-aldsonville.
“5. That traditionally as well as by custom and law, the Mayor of Donaldsonville and Commissioner of Public Health and Safety, has been entitled to and has exercised the inherent power to hire and fire personnel under his supervision,’ which right is indispensible in order to maintain any semblance of authority and efficient management of the duties assigned him by law.
“6. That petitioner has attempted to fulfill these duties as Commissioner of his department of Public Health and ■ Safety, but is being molested, interferred with, and prohibited from doing so by the illegal acts and announced intention of the defendants, Joseph Montero II and Lawrence Regira, as will more fully appear hereafter.
“7. That at a meeting of the Commission Council of the City of Donaldsonville held June 20, 1961, same being the first meeting of said council since the election of the present members thereof, an alleged ordinance was introduced and adopted by an affirmative vote. of the defendants Joseph Montero II and Lawrence Regira, Commissioner of Finance, and Commissioner of Streets and Parks respectively, petition voting in the negative, entitled ‘Administrative Ordinance’, a certified copy of which is attached hereto and made part hereof, the same as if quoted herein in ex-tenso; and marked Exhibit A. That the Council thereafter, by the same vote adopted a resolution hiring all named City Employees, copy of which is attached hereto and made part hereof; and marked Ex- *793 Mbit B. That the resolution covered all personnel for all departments of the City.
“8. That petitioner at the said meeting, asked for the right to appoint employees to his own department; that he was denied this right by the defendants Montero and Regira, the said Regira stating openly in answer to the requests of petitioner ‘Two to One, Two to One, Go to Court, Go to Court’, or words to that effect.
“9. That the alleged ordinance and resolutions are an attempt under guise of legislative enactment to usurp the executive authority of the Mayor and Commissioner of Public Health and Safety over his department, and such legislative enactments are null, void and of no force and effect.
“10. That the action of the Commission Council for the City of Donaldsonville, acting through Joseph Montero II and Lawrence Regira, in passing the alleged Ordinance, and the resolution adopted thereunder is null and void and of no effect and such action or actions based thereon are ultra vires and in contravention to the Commission form of Government as provided by 'law, insofar as the same attempts to assume the executive powers of the Commissioner of Public Health and Safety.
“11. Petitioner alleges he alone has the exclusive authority for the employment and discharge of personnel for the police department, Police Chief excepted, fire department, Fire Chief excepted, garbage collection department, swimming pool activities, building inspector and all activities and duties necessarily pertaining to or connected with the office of Mayor and Chief Executive Officer of the City, and Commissioner of Public Health and Safety, which rights have been denied petitioner as a result of the acts of defendants described above.”
******
“14. That the alleged Ordinance attempts to divest the Mayor from his legal right to call special meetings of the Corn-mission Council whenever he deems it necessary or proper, by the inclusion in said alleged Ordinance a provision calling for 24 hour notice of special meetings and calling for the time of said special meetings to be at eight o’clock P.M. That such provision is illegal, unwarranted and not in the interest of the people of the City of Don-aldsonville.
“IS. That at the same meeting of the Commission Council, an alleged Ordinance was passed amending and re-enacting Section 20 of Part 1 of Chapter 3 of Municipal Ordinance No. 328 by substituting the words ‘Commission Council’ for the words ‘Director of .the Individual Department or Agency’, a certified copy of which is annexed hereto and made part hereof the same as if quoted herein in extenso and marked Exhibit ‘C’. That the objects and purposes of said ordinance were to implement and coordinate the provisions of said ordinance No. 328 with the provisions of the illegal ordinance passed on June 20, 1961, and on which this action is based, that therefore this ordinance is likewise illegal, insofar as it transgresses the authority of the Commissioner of Public Health and Safety.”
The plaintiff therefore prayed in part that the defendants be cited and ordered to show cause “why a preliminary injunction should not issue herein prohibiting the said defendants from enforcing and proceeding under the two ordinances of June 20, 1961, and the resolution of employment marked Exhibit ‘B’, and from in any way interfering with, molesting or preventing petitioner in any manner, shape or form from performing, the regular powers and duties of the office of Mayor of Donaldsonville and Commissioner of Public Health and Safety, and more particularly but not exclusively from hiring and discharging all the employees of the fire, police, garbage collection, swimming, lighting departments, building inspector (other than the Chief of Police and the Fire Chief) at salaries commensurate with past and present practices, and *794 the hiring of a secretary to the Mayor and other staff help as may he necessary or proper to the office of Mayor; petitioner further prays that after due proceedings had that the alleged Ordinances, and the resolutions adopted thereunder be declared null and void and of no force an effect insofar as they attempt to assume the executive powers of the Commissioner of Public Health and Safety as aforesaid over the police department, fire department, garbage collection department, swimming pools, lighting department and building inspector; and the calling of special meetings by the Mayor at such time as he deems necessary and proper, and'that a permanent injunction issue herein in like manner as the preliminary injunction; and for all general and equitable relief.”'
The defendants first filed six dilatory exceptions, the last two to the joining of the “Commission Council” as a party defendant in the suit. The lower court sustained the last two .dilatory exceptions pertaining to the improper joinder of the Commission Council and they are no longer a party to the suit, but overruled the other four exceptions.
The defendants also filed peremptory exception of no cause of action and one of no right of action in that the petition “does not state an interest in said plaintiff to institute this suit.” These exceptions were referred to the merits.
The Lower Court tried the rule .for the preliminary injunction and refused it on the ground that the plaintiff would not suffer immediate and irreparable injury “nor would it be to the best interest of all the citizens of- the city to enjoin, during the pendency of this suit, the enforcement of the said • ordinances and resolutions duly and regularly adopted by the Commission Council.” The parties thereupon stipulated that the trial of the rule would constitute the trial on the merits of the case. The Lower Court in his written reasons for judgment- stated that the dilatory exceptions were overruled “upon plaintiff’s offer to amend instanter, which the court be-? Heves could have been done without prejudice to the defendants.” There is some dispute as to whether the minutes show the offer to amend instanter, however, the defendants did not insist upon the amendments being made nor a continuance but agreed that the trial of the rule would constitute a trial on the merits. The dilatory exceptions are of small importance and doubtful validity. For example, No. 1 was “That said petition does not set forth the names of the said plaintiff.” The petition sets forth: “The petition of Dr. D. C. Foti, a person of full age and majority and a resident of Ascension Parish * * * The exception was directed to the use of the initial rather than the name. Regardless of this fact we will accept the statement of the District Judge that an offer was made to amend instanter and we agree that it could have been done without prejudice to the defendant and will therefore not consider the dilatory exceptions.
As to the peremptory exceptions counsel is right that if they are such as would cause a termination of the action, they should not be referred to the merits of the case but either sustained or overruled before the case is proceeded with on its merits. However, in his brief he takes the position that “When the trial court refers such exceptions to the merits there is nothing that the appeal court can do that will give the ex-ceptor any substantial relief against the inconvenience that the exceptor may suffer.” Based upon this statement as to which we express no opinion counsel for the defendants does not press the peremptory exceptions, but passed on to the merits of the case.
The Lower Court held that the two ordinances in question were ultra vires, illegal, and void, and assigned written reasons in which he stated the basis of his judgment, and we quote therefrom:
“Accordingly, we find that the two ordi-, nances adopted by the Commission Council of Donaldsonville, wherein they attempt to *795 assign to itself the administrative power appropriate to the Department of Public Health and Safety are in violation of the statutes, ultra vires, and void. The resolution designating employees for this said department, other than Chief of Police and Fire Chief, is likewise of no effect.
- “The two ordinances are illegal because they are inconsistent with the requirements of the Commission Plan of government applicable to Donaldsonville. First, they attempt to assign to the Commission Council powers and functions which the law requires the council to assign to particular departments of the city government. Secondly, the ordinances are illegal because the action taken by the city council is action which can only be taken by the legislature itself. Under the mandatory requirements of the law under which the City of Donald-sonville operates, the administrative powers and functions must be assigned to the appropriate departments. The elected commissioner is thereupon charged with the proper administration of his department. He is permitted to hire and fire such personnel as may be reasonably necessary for its successful operation, with the exception of those particular officers whose appointment is otherwise provided. In the proper administration of city government, it may become necessary for the city to employ a particular person to discharge some particular duty not appropriate to any one of the three departments as to the occasion, from time to time, may arise. This inherent power was recognized by the Supreme Court in the case of Kirkpatrick v. City of Monroe, 157 La. 645, 102 So. 822, in interpreting Section 8 of Act 207 of 1912, although, the Court in that case held that under this act the city council could not contract the services of an engineer for what amounted to permanent employment. Thus, the Commission Council, with the exceptions of those positions as heretofore stated, is not vested with authority to hire or fire regular and customary city personnel which is appropriate to a particular department. • What personnel is appropriate to a particular department must be determined reasonably and with due regard to the object and purposes of the Commission' Flan of Government. What would be reasonable would to a great extent depend upon the surrounding circumstances. For example, it would be unreasonable to assign to another department a position which the city had in the past customarily considered as being within a particular department.
“We further find that the statutes permits tile mayor or two other councilmen to call special meetings at such times as they may deem necessary. We find no specific authority in the statute that such meetings must be proceeded by a twenty four hour notice. Accordingly, this provision with-regard to notice is inconsistent with the statute. We find further that the Mayor, other than as' Commissioner of Public Health and Safety, is granted no specific authority by the Statute to employ a secretary and a clerical stall for the office of mayor.”
The defendants have appealed and their contentions as to their powers, duties and functions as granted the Commission Council under the law are inclusive of the action taken by a majority of the Council as set forth in the ordinances under attack by the plaintiff.
The allegations of the plaintiff’s petition, quoted supra, reveal exactly • the grounds upon which he has pitched his attack, upon the action taken by the majority of the Commission Council, as set forth in the ordinances, supra.
It is the plaintiff’s contention that he alone has the exclusive authority for the employment and discharge of personnel in the Department of Public Health and Safety, except the Chief of Police and the Chief of the Fire Department, and with the exception of the two named the personnel would consist of all in the police department, the fire department, the garbage collection department, swimming pool activities, building inspector and all those *796 engaged in activities and duties necessarily-pertaining to or connected with the office of Mayor and Commissioner of Public Health and Safety.
In order to answer the question under consideration, it is necessary that we review the law and jurisprudence interpreting same with respect to the powers, duties, and functions of the Commission Council and of the individual members composing the Council.
The law provides that every municipality which adopted the provisions of Act 207 of 1912 prior to January 10th, 1935 shall be governed by the Commission Plan without the further necessity of the adopting election provided for in the statutes, R.S. 33:-502, and that the provisions of the law in the Revised Statutes shall prevail over all provisions contained in the charter of the municipality at the time it came under the Commission Plan, and further, that “All of the powers belonging to the municipality, conferred either by its charter, or by law, not in conflict with the provisions of this Part, shall be preserved to the municipality unimpaired.” LSA-R.S. 33:506. LSA-R.S. 33:531, Sub-Part C, in the portion applicable to the City of Donaldsonville, reads as follows:
“Functions of Council; Municipal Departments.
“§ 531. Powers of council; municipal departments.
“The council shall have and exercise all powers, duties, and functions had and exercised by the municipal authorities under the charter of the municipality prior to the time it came under the commission plan, unless otherwise provided in this Part.
******
“In municipalities having three members of the council, these powers and duties shall be distributed among three departments, as follows:
“(1) Department of public health and safety.
“(2) Department of finance and public utilities.
“(3) Department of streets and parks.
“In all municipalities, the council may, by ordinance, change the name of the department of streets and parks to the department of public works, or any suitable name. The council shall determine the powers of and duties to be performed by a department. Subject to any applicable civil service law, the council shall prescribe the powers and duties of officers and employees; may assign particular officers and employees to one or more of the departments ; may require any officer or employee to perform duties in two or more of the departments; and may make rules and regulations necessary for the proper and economical conduct of the affairs of the municipality.
“The council may create and elect a park commission, a library board, a water and sewerage board, and other necessary boards and invest them with appropriate powers and duties.”
The pertinent portion of LSA-R.S. 33:-532 is as follows:
“§ 532. Commissioners of departments. ******
“In municipalities having three members of the council, the mayor shall be commissioner of the department of public health and safety; one councilman shall be commissioner of the department of finance and public utilities; and one councilman shall be commissioner of the department of streets and parks.”
LSA-R.S. 33:523 reads as follows:
“The council shall at its first meeting, or as soon as practicable thereafter, appoint by majority vote, subject to the provisions of any applicable civil service law, the following officers: municipal attorney, secretary-treasurer and tax collector, chief of police, chief of the- fire department, auditor, civil engineer, municipal physician, and any other officers and assistants necessary for the *797 efficient conduct of the affairs of the municipality. In municipalities having a population of less than forty thousand, with the exception of the chief of police and chief of the fire department, only the above named officers who are necessary for the efficient transaction of the affairs of the municipality shall he appointed. Any official or assistant appointed by the council may he removed from office at anytime hy a vote of a majority of the members of the council, subject to the provisions of any applicable civil service law.”
In view of the specific provision in the law that “all of the powers belonging to the municipality, conferred either by its charter, or by law, not in conflict with the provisions of this Part, shall be preserved to the municipality unimpaired,” supra, and that “the council shall have and exercise all powers, duties, and functions had and exercised by the municipal authorities under the charter of the municipality prior to the time it came under the commission plan, unless otherwise provided in this Part,” it is well to remember that Act No. 139 of the Legislature of Louisiana of 1900, under which the Town of Donaldsonville was incorporated, provided for the Mayor-Alder-manic form of government, which was known as the “strong mayor” form in that the latter is specifically declared to be the chief executive officer of the town, and invested with the power of veto “of any ordinance or resolution of the Council * * * ” which would cover any legislative or administrative acts of the council, and, in addition, granted many other powers and burdened him with many other duties. See Act 139 of 1900, Section 10. The municipality under the commission form retained all of these powers which in turn were specifically granted to the Commission Council. The council therefore under the law possessed and had the power to exercise all powers, duties and functions possessed and had by all municipal authorities under the charter of the town of Donaldsonville as set forth in Act 139 of 1900, in addition to any additional powers, duties and functions granted in LSA-R.S. 33:501-562. The individual members composing the Commission Council of the City of Donaldsonville have only such powers, duties and functions as specifically granted under the provisions of the law now in effect governing the Commission Plan of Government, as contained in the Revised Statutes, supra. (Emphasis added.)
Under LSA-R.S. 33:532, wherein the individual members of the council are assigned as commissioners of the departments, quoted supra, we find under “History and Source of Law Source: Acts 1934, 3rd Ex. Sess., No. 13, § 8. Reporter’s Notes. Under the 1910 Act, councilmen are called ‘superintendents’ of their respective departments, instead of ‘commissioners.’ This is not important enough for a caveat.”
In addition the mayor or two councilmen may from time to time call special meetings, and the mayor shall be the chairman of the council and preside at meetings, supervise all departments, report to the council for its action in all matters requiring attention. R.S. 33:535. In addition the mayor and each councilman may vote on all questions coming before the council and the affirmative vote of two members “shall be necessary to adopt any motion, resolution, or ordinance, or pass any measure, unless a greater number is provided for in this Part.” LSA-R.S. 33:534. (Emphasis ours.)
The above are the powers granted and the duties imposed upon the mayor under the present law governing the Commission Plan of Government. Other than that he would only have such additional powers as the Commission Council might within the law see fit to assign to him. For additional powers of the Council other than herein-above enumerated and quoted, see R.S. 33 :- 536, 537.
We believe that the law hereinabove quoted applicable to the question under decision clearly places the power of hiring and *798 discharging, not only the officers enumerated in Section 523, but also all assistants, and/or employees of the Department of Health and Safety, of Finance and Public Utilities, and of Streets and Parks, in fact, all personnel of the City of Donaldsonville, as an exclusive power, duty and function of the Commission Council. There is no provision, specific or implied, which gives to the mayor, as such, or as the Commissioner of Public Health and Safety, the power to hire and discharge the personnel of the Department of Public Health and Safety. It is argued by counsel for the plaintiff that Section 531 states that the powers given thereunder to the Council “shall be distributed among three departments * * * This is true but not in the sense that it is distributed to an individual commissioner of a department who, under the law, has the direction and control of the Department in the latter’s exercise of the powers, duties and functions which the Council has determined should be performed by such department. The law under this section plainly states that: “The council shall determine the powers of and .duties to be performed by a department.” There are no powers and duties and functions distributed to any individual, whether it be the duly elected Mayor and/or Commissioner of the Department, all as provided under Section 531. Under this section it means that a department, for example, of Public Health and Safety, in the case under consideration, has been given the power and burdened with the duty of exercising that power in matters of public health and safety in the City of Donaldsonville, under the direction and control, which is provided by law, Section 532, of the Commissioner ■of that Department, who is designated as the Mayor.
As to the question of the hiring and discharging of any personnel of the City of Donaldsonville, whether he be classed as an officer or an assistant or as an employee, for all are employees, we believe that the law and the jurisprudence supports our view heretofore expressed that such power, duty and function is solely with the Commission Council. Under Section 523, quoted supra, the council shall at its first meeting, or as soon as practical thereafter, appoint by majority vote the following officers: “municipal attorney, secretary-treasurer and tax collector, chief of police, chief of the fire department, auditor, civil engineer, municipal physician, and any other officers and assistants necessary for the efficient conduct of the affairs of the municipality.” This section further provides without changing the meaning that the municipality having a population of less than forty thousand, which would apply to the City of Donald-sonville, “with the exception of the chief of police and chief of the fire department, only the above named officers who are necessary for the efficient transaction of the affairs of the municipality shall be appointed.” (Emphasis added.)
The language used covers all of the employees of the City of Donaldsonville, for it says “necessary for the efficient conduct of the affairs of the municipality.” This language means that the Commission Council shall employ sufficient officers and assistants necessary to conduct the entire affairs of the City of Donaldsonville. It is obvious that this section does not use the word employees, however, both officers and assistants are employees.
In Higginbotham v. City of Baton Rouge, 190 La. 821, 183 So. 168, at pages 170-171, the Supreme Court of Louisiana, through Chief Justice O’Niell as its organ, in speaking of the position occupied by the plaintiff as “Superintendent of Public Parks and Streets” for the City of Baton Rouge stated: “ * * * The position in which Powers Higginbotham was employed was in the nature of a public office, in that the duties and functions of the employee were governmental or administrative duties and functions. * * * The duties or functions of the employees — called commissioners. * * * »>
We believe that the Council for the City of Donaldsonville is not only given the *799 power, but the exercise of that power is made mandatory by the use of the word “shall” to appoint by majority vote sufficient employees, some of whom are specially designated under the provisions of Section 523 and referred to as “officers and assistants,” to conduct all the affairs of the City of Donaldsonville. There can be no dispute that the law provides under this same section that any official or assistant appointed by the Council may be removed from office at any time by a vote of a majority of the members of the Council, subject to the provisions of any applicable Civil Service Law. If we are correct in our interpretation of the law and jurispru--dence that the Commission Council has the right to employ all personnel of the City of Donaldsonville, they then have the right to discharge such personnel. Also, in the Hig-ginbotham case, the Supreme Court, at page 172 stated:
“ * * * By the provision of Section 20 of Act No. 207 of 1912, all of the powers and authority that were conferred by the original charter of any city that afterwards adopted the commission form of government were reserved to the city, to be exercised by the mayor and council selected under the provisions of the act of 1912. In Section 7 of the charter of the City of Baton Rouge (Act-No. 169 of 1898) it is provided that the ‘employees’ of the city are removable as thereinafter specified. In Section 52 of the act, as amended by Act No. 249 of 1914, § 4, it is declared: 'All officers elected by the Council shall be removable by the Council at pleasure.’ In Section 8 of Act No; 207 of 1912, it is declared that any official or assistant elected or appointed by the commission council may be removed from office at any time by a vote of the majority of the members of the council, except as herein otherwise provided. There is no exception, elsewhere in the statute, that might be applicable to this case. This general rule, that a municipal council may remove at any time any official appointed or elected by the council, or anyone employed by the council ter perform governmental functions, was recognized in the case of Kirkpatrick v. City of Monroe, 157 La. 645, 102 So. 822.” (Emphasis added.)
We realize that the Supreme Court did not specifically state that the Coúiicil had the sole power to hire and discharge employees, however, it clearly recognized the power of the Council to employ, which is. contrary to the plaintiff’s contention herein that the heads of the departments, that is, the Commissioner of Public Health and Safety, of Finance and Public Utilities, and of Streets and Parks, has the sole power to employ and discharge all personnel in their respective departments.
We are also fortified in our opinion by the provisions in R.S. 33:531 which we' have not heretofore discussed in detail. Under this section the Council and not the Commissioner, nor the Mayor nor any other individual is given the mandatory duty of prescribing “the powers and duties of officers and employees; may assign particular officers and employees to one or mqre of the departments; may require any offi-' cer or employee to perform duties in two or more of the departments; and may make rules and regulations necessary for the, proper and economical conduct of the af--. fairs of the municipality.” It would be in-. congruous to hold that the commissioner-, could employ all of the personnel in his department and under the provision just-' quoted the Council “shall” prescribe the. powers and duties of those employees and: may assign one or all of those employees to another department or may require such employees to perform duties in two or more of the departments. (Emphasis added.)
In the case of Kirkpatrick v. City of Monroe, 157 La. 645, 102 So. 822, 824, decided by the Supreme Court of the State of Louisiana, the court -made it crystal clear that the Council could employ a person to discharge certain duties as the occasion for the discharge of those duties might from time to time arise, and that it also has the right to discharge such employees at pleasure, and that the Council could create minor *800 offices as it might deem necessary for the administration of the affairs of the city and appoint suitable persons to fill them but that such officers were removable at the pleasure of the Council. Specifically the Court stated:
“In so ruling, we are not to be understood as holding that the council may not employ a person to discharge certain duties as occasion for their discharge may from time to time arise, for it may, but it has the right to discharge such employees at pleasure. Section IS of Act 47 of 1900. Nor are we to be understood as holding that the council may not create such minor offices as it may deem necessary for the proper administration of the affairs of the city, and appoint suitable persons to fill the offices thus created. It may, but such officers are removable at the pleasure of the council. Section 8 of Act 207 of 1912.”
The Kirkpatrick case was discussed by the lower court in its written reasons for judgment and disposed of as follows:
“In the proper administration of city government, it may become necessary for the city to employ a particular person to discharge some particular duty not appropriate to any one of the three departments as the occasion, from time to time, may arise. This inherent power was recognized by the Supreme Court in the case of Kirkpatrick v. City of Monroe, in interpreting Section 8 of Act 207 of 1912, although, the Court in that case held that under this act the city council could not contract the services of an engineer for what amounted to permanent employment * * * ”.
In the first place the City Council is specifically directed at its first meeting to appoint by a majority vote “a civil engineer” if necessary for the efficient transaction of the affairs of a municipality having a population of less than forty thousand. In addition, the position of the lower court is in conflict with that taken by the counsel for the plaintiff in this court, for the latter contends that the Mayor as Commissioner of the Department of Public Health and Safety alone has the power to hire and fire all personnel in that department.
 It might be argued that there is no similar provision in Act 139 of 1900 under which the City of Donaldsonville was incorporated as is contained in Section 15 of Act 47 of 1900, the Act under which the City of Monroe was incorporated, and which was cited as authority for a portion of the Court’s ruling in the Kirkpatrick case. The answer to this counter argument is obvious and twofold. In the first place the power of an appointing authority to remove an employee is incident to the power to appoint, where the term is not prescribed by law. Hartwig Moss Insurance Agency v. Board of Com’rs of Port of New Orleans, 206 La. 395, 19 So.2d 178-■184, and the cases therein cited. In the second place, even though there was no specific provision in Act 139 of 1900 as Section 15 of Act 47 of 1900, there is no doubt that anyone employed in the City of Donaldsonville when it was governed by the provision of Act 139 of 1900, could be discharged by the authorities or an authority of the City of Donaldsonville. Under R.S. 33 :531 the express grant to the Council of all powers, duties and functions had and exercised by the municipal authorities under the charter of the municipality prior to the time it came under the Commission Plan, and R.S. 33:523 in which the Council is given the right to remove any official or assistant appointed by it, which we believe covers all employees of the City of Donald-sonville and gave to the Council the power to hire and discharge all employees of the City of Donaldsonville, be they official, assistant or an employee of another class. ■Of course when we state that the council could remove an officer without cause it is qualified so as not to include an officer whose term is fixed by law. Such officials can only be removed for cause. Also see Keefe v. City of Monroe, 9 La.App. 545,. 120 So. 102, 105, wherein it is stated by the Court of Appeals of the State of Louisiana, that:
*801 “Finally, the city was within its rights in dispensing with the services of plaintiff at any time, whether he be considered an officer or an employee. Section 15 of Act 47 of 1900 reads as follows:
“ ‘That the Council may remove, at its pleasure by vote of the majority thereof, any officer or employee, elected or appointed by it.’
“See Kirkpatrick v. City of Monroe, 157 La. 645, 102 So. 822.”
Our opinion on the point under discussion as to the hiring and discharge of the employees of the City of Donaldsonville is fortified by an opinion of the attorney general contained in the Attorney General’s Opinions for 1944 — 46, pg. 488 and 490, dealing directly with the question under consideration, and we quote:
“April 30, 1945
“Mr. John L. Conner, Mayor-Elect
“City of Jennings
“Jennings, Louisiana
“Dear Mr. Conner:
“Acknowledgment is made of your letter of April 19, 1945, concerning the respective powers of the Mayor, Commissioner of Finance and Commissioner of Streets and Parks of the City of Jennings.
“The City of Jennings availed itself of the provisions of Act 13 of 1934 (3rd E.S.) and is a city of the second class as provided by Section 2 of the statute. Under Section 4 thereof cities of that class have three departments: (1) the Department of Public Health and Safety, of which the Mayor is the commissioner; (2) the Department of Finance and Utilities and (3) the Department of Public Parks and Streets, the commissioners of which, including the mayor, constitute the municipal council. That section of the law further provides:
“ ‘The councils of both classes of cities, except as otherwise provided herein, shall determine the duties and powers to be performed by and assign them to, the appropriate departments, and shall prescribe the powers and duties of officers and employees; may assign particular officers and employees to one or more of the departments, and may require any officer or employee to perform duties in two or more of the departments, and may make such other .rules and regulations as may be necessary and proper for the proper and economical conduct of the City’s affairs.’
“Under Section 2 each of the councilmen was elected as commissioner of a specific department of the city government, so that Section 4 does not, in our opinion, mean that the council may legally deprive the mayor of any of his functions, or relieve him of his duties, with respect to the public health and safety which are inherent in the office itself, and the same relates, of course, to the other two offices. In other words, matters clearly relating to health and safety should be administered by the mayor and their administration could not be legally transferred or committed to the commissioner of finance. Likewise the financial affairs of the city belong to the department of finance and cannot be administered by a commissioner other than the commissioner of finance and utilities. Also, the affairs of the city with respect to public parks and streets must be administered by the commissioner of that department. Each of the commissioners was selected by the electors in the municipal election on the theory that he was best qualified to perform the duties of the particular office Section 2 of the statute required him to declare for, and one whom they elected to administer health and safety would not necessarily have been chosen if he had become a candidate for commissioner of one of the other departments. We think, therefore, that the discretion given the council to determine the duties and powers of the several departments of the city government relates to matters which do not clearly come within any one of the three departments, as to which their administration may be assigned by the council to one of the commissioners of its choice.
*802 “It is different, however, as to the selection of personnel. No commissioner has any inherent right to select the personnel of his department. This right is given by Section 8 to the council. There is a difference between direction and selection and while the council has the right to select the personnel of each of the departments, the right of direction, in accordance with the ordinances passed by the council, lies with the commissioner who is responsible for the proper administration of his department.
“The council has charge of the general municipal government under Section 3 and has the right to prescribe the manner in which each department shall operate, and the commissioner of each department must administer it in the manner prescribed. Under Section 12, the Mayor is given supervisory authority over all departments and is required to report to the council for its action all matters requiring, in his judgment, the attention of any of them.
“For these reasons we answer your question specifically as follows:
“(a) The Commissioner of Finance and Utilities has the legal right to direct the functions and personnel of the municipality owned waterworks plant and his authority in this respect is limited only by any valid ordinance of the council prescribing policies or plans for its operation. This plant is a public utility, the administration of which, like any other municipally owned public utility, belongs to this commissioner as an inherent function of his office.
“(b) Aside from the authority conferred by Section 12 on the mayor to exercise general supervision over all departments and the right of report therein contained, no individual commissioner has any authority over any department but his own, but the council, of which he is a member, may adopt regulations for the operation of any department in order to insure its proper operation and that of any public owned utility under its administration.
“(c) The Commissioner of Streets and Parks, like any other commissioner, has a legal right to administer his department in his own way as long as he does not violate any state or municipal ordinance. The council may prescribe regulations to govern his administration, but until such regulations are adopted, neither the mayor nor the finance commissioner has any concern with his administrative acts.
“W. C. Perrault.”
“May 16, 1945
“Mr. John L. Conner, Mayor-elect
“Jennings, Louisiana
“Dear Mr. Conner:
“Replying to your letter of May 10th, 1945, with reference to our opinion of April 30, 1945, concerning the respective powers of the Mayor, Commissioner of Finance and Commissioner of Streets and Parks of the City of Jennings, we wish to call your attention to Section 21 of Act 13 of 1934 (3rd E.S.) which provides that cities which took advantage of the provision of Act 207 of 1912 shall continue to operate under that act ‘as modified by this act’, so it appears to us that the 1934 act would prevail in case of conflict with the 1912 act. However, for the purpose of our opinion on April 30, 1945, it makes no difference at all which one of these acts applies to the City of Jennings because the provisions of the 1934 act referred to in our opinion are in substance the same as corresponding provisions of the 1912 act.
“Under either act, the Council of the City of Jennings, has a right to select the employees of any department and may provide a program for the operation of any department.
“W. C. Perrault.”
Plaintiff relies upon Dawkins v. Bazer, 172 La. 327, 134 So. 238, 239 decided by the Supreme Court of Louisiana. In this case the chief of police, contended in his answer to the suit that, by the effect of Act 187 of 1918, page 352, placing the police department of Shreveport under Civil Service, the *803 Police Department had been placed under the authority and control of the Chief of Police, and that he was thereby given authority to appoint the members of the police force, subject, of course, to the rules and requirements of the Board of Civil Service Commissioners.
The Superintendent of Public Safety, the City of Shreveport being under the Commission Form of government in accordance with Act 302 of 1910, sued to enjoin the Chief of Police from interfering with the Superintendent’s alleged authority as superintendent of the police department.
The Court of Appeal for the Second Circuit, acting under authority of Section 25 of Article 7 of the Constitution, LSA, submitted to the Supreme Court two questions of law, on which the Court of Appeal asked for instructions. The questions were: (1) In whom is vested the power of direction and control of the police department of the City of Shreveport, and (2) In whom is vested the authority to appoint the police officers for the City of Shreveport, below the rank of Chief of Police.
The Supreme Court, with Chief Justice O’Neill as its organ, summed up the questions as follows:
“Stated specifically, the question in each instance is whether the authority is vested in the superintendent of public safety, or in the chief of police.”
The Supreme Court answered the questions propounded by the Court of Appeal as follows:
“Our answer to the questions propounded by the Court of Appeal is that the power of direction and control of the police department of the city of Shreveport is vested in the superintendent of the department of public safety, and so is the authority to appoint the officers of the police department, of lower rank than that of the chief of police, subject, however, to the rules and regulations of the board of civil service commissioner ; * * *
Thus we see that the contest in this case was between the superintendent of the department of public safety for the City of Shreveport and the Chief of Police and nowhere was any contention made that the Council alone had such authority and the Council was not a party to this suit. In other words, the decision is not authority for a specific holding that the appointive power of the personnel of the police department and the fire department rests with the Commissioner of Public Health and Safety rather than the Council for the question was not before the Court nor considered by the court and the Council was not a party.
For the above and foregoing reasons we hold that the power of appointment and discharge is in the Council for all officers, assistants, and other employees of the City of Donaldsonville, Louisiana. We further hold that the ordinance amending and re-enacting a section of Municipal Ordinance No. 328 by substituting the words “Commission Council” instead of the words “Director of the individual department or agency” is legal and valid and that the resolution passed by a majority vote of the Commission Council of the City of Donald-sonville, employing municipal officers and employees of the City of Donaldsonville, fixing their rate of or basis of compensation and assigning said employees to the respective departments is also legal and valid.
The plaintiff levelled the same charge as to the administrative ordinance, viz, that they are “null and void and of no effect and such action or actions based thereon are ultra vires and in contravention to the Commission Form of government as provided by law, insofar as the same attempts to assume the executive powers of the Commissioner of Public Health and Safety,” and this is followed by Article 11, supra, which alleges that the petitioner “has the exclusive authority for the employment and discharge of personnel for the police department, Police Chief excepted, fire department, Fire Chief excepted, garbage collection department, swimming pool activities, building *804 inspector and all activities and duties necessarily pertaining to or connected with the office of Mayor and Chief Executive Officer of the City, and Commissioner of Public Health and Safety * *
Thus, the basis of petitioner’s suit is the fact that he alone has the exclusive authority for the employment and discharge of personnel in the various departments which he has listed. He does not allege, nor is there any contention that the administrative ordinance is ultra vires, null and void because it assigned to the Commissioner of Streets and Parks the building inspector, sewer system or storm sewers, the city dump and sanitary land fill and collection of garbage and refuse on the ground that the appropriate department would be that of Public Health and Safety. However, it has specifically been held in Dickson v. Hardy, La.App., 144 So. 519 that any attempt to assign any municipal power otherwise than to the appropriate one of the departments of the municipal government would be in violation of the statute, ultra vires, and void. The Supreme Court in Dawkins v. Bazer, supra, stated the same thing to be the law, and cited the same case as later cited in Dickson v. Hardy, supra, of Oliver v. Daly, 103 N.J.L. 52, 134 A. 870, 872, rendered by the Court of Errors of Appeal of N.J. in October, 1926. This issue has not been raised.
We are not concerned with the good or bad features of the Commission Form of government. Under it the three elected commissioners constitute the council and have an equal vote on all matters, and the majority rules.
Plaintiff has attacked the resolution of the Council requiring twenty-four hour notice to be given to every member of the Council prior to the holding of a special meeting. The attack was based upon a charge of unlawful assumption of legislative power. Counsel contends that the notice to be given for special meetings is fixed by LSA-R.S. 42:7. This Section reads in part that “in the event of special meetings, advance public notice shall be given by legible notices posted on a bulletin board or other prominent place at the domicile, and place at which the meeting is to be held if different from domicile, of the council, police jury, governing body, board or authority calling such meeting, and by such other means as are consistent with circumstances.” (Emphasis added.)
We do not believe that the requirement by the council is an assumption of legislative authority and also that it is authorized under the emphasized portion of the above quote. Notice to the council members would be certain under the provision, whereas not absolutely certain under Section 42:7. The resolution authorized the mayor or any two commissioners to call a special meeting but the 24 hour notice is mandatory, except:
“Provided that the requirement of a notice shall not be binding in any special meeting where all the members of the Council are present.”
Thus, Section 4 as to special meetings would provide for a mandatory 24 hour notice but the exception that no such notice is required when all three members are present would give the council the express right to meet in an emergency with all three members present without the necessity of giving notice. We therefore do not find anything unlawful, or ultra vires in- this resolution.
For the above and foregoing reasons the judgment of the District Court is hereby reversed and the plaintiff’s suit dismissed at his costs.
Reversed.